

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| TWO PARKS, LLC, | § | |
|     Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 3:18-2576-MGL |
| | § | |
| KERSHAW COUNTY, SOUTH CAROLINA, | § | |
|     Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Two Parks, LLC, (Two Parks) brought this action against Kershaw County, alleging Defendant Kershaw County, South Carolina (Kershaw County) violated its rights, as a class of one, pursuant to the Equal Protection Clause of the Fourteenth Amendment.  The Court has federal question jurisdiction over the matter in accordance with 28 U.S.C. § 1331.

Pending before the Court is Kershaw County's motion for summary judgment.  Having carefully considered the motion, the response, the reply, the record, and the applicable law, the Court will grant the motion.

**II.     FACTUAL AND PROCEDURAL HISTORY**

"The main principal of Two Parks is Harold Pickrel[,] a United States and South Carolina citizen and resident of Richland County."  Complaint ¶ 6   "Mr. Pickrel has more than thirty years

of experience developing residential lots and commercial properties, and has longstanding relationships with numerous major builders." *Id*. ¶ 7.

"Two Parks owns 93.6 acres of unoccupied land off of Friends Neck Road in Lugoff, South Carolina, which was previously part of a larger tract known as Lugoff Farms." *Id*. ¶ 8. "This Lugoff Farms parcel is currently zoned as RD-1, the designation for rural resource districts, on which residential development is restricted to parcels of at least one acre with 100 feet of road frontage." *Id*. ¶ 9. "In 2016[,] Two Parks petitioned the Kershaw County Planning Commission (the Planning Commission) for amendment of the zoning ordinance/map to rezone Lugoff Farms to R-15, the designation for low density, single-family residential districts." *Id*. ¶ 10.

"The Planning Commission's staff investigated the request, and found that R-15 zoning was appropriate for the Lugoff Farms parcel." *Id*. ¶ 11. "The parcel was contiguous with other property that had already been zoned R-15 and developed with residential units, and the proposal for R-15 zoning complied with the goals of Kershaw County's adopted Comprehensive Plan and Future Use Map." *Id*. ¶ 12.

"The staff recommended to the Planning Commission that the Commission recommend approval of the rezoning request to Kershaw County Council, which the Commission did by unanimous vote on October 10, 2016." *Id*. ¶ 13. "Two weeks later, on October 25, 2016, Kershaw County Council voted unanimously to deny . . . a first reading of the rezoning request." *Id*. ¶ 14. At the meeting, seven individuals had registered their opposition and/or concerns about the rezoning; and one individual presented a petition with 250 signatures in opposition to the request. Kershaw County's Motion for Summary Judgment, Exhibit G at 4.

Two Parks alleges that, although "the official denial letter sent to Two Parks by the Planning Commission did not include specific reasons, unofficial reports indicate that County Council based its decision on . . . concerns of . . . citizens about destruction of wild animal habitats, traffic on nearby Lachicotte Road, and potential overcrowding of local schools by new residents of the proposed development." Complaint ¶ 15.

"In response, Two Parks hired a qualified engineer to investigate and generate a report of the impacts of the proposed development of traffic on Lachicotte Road." *Id*. ¶ 16. "The engineer concluded that the proposed development would not have negative impacts on traffic to, from, or on Lachicotte Road, and reached this conclusion using [South Carolina Department of Transportation] methodology." *Id*. ¶ 17. "This minimal impact on nearby traffic," as Two Parks describes it, "was due in part to the incremental development of the property for single-family homes, which would also minimize the impact on the local schools from new students moving into the development." *Id*. ¶ 18.

According to Two Parks, "the proposed residential development of . . . 137 homes was very similar to developments recently approved by Kershaw County Council, and was . . . in line with the Comprehensive Plan and Future Use Map developed in March 2016 as part of 'Vision Kershaw 2030,' the County's adopted plan for economic development and growth for the near future." *Id*. ¶ 19. "In December 2017, Two Parks reapplied to the Planning Commission to rezone the Lugoff Farms parcel to R-15 zoning." *Id*. ¶ 20.

"The Planning Commission's staff again investigated the request, and again recommended to the Planning Commission that the request be granted." *Id*. ¶ 21. "The staff . . . found that the

3

Lugoff Farms parcel neighbored contiguous parcels to the north, south, and east that contained parcels zoned R-15." *Id*. ¶ 22.

"The staff . . . found that the proposed residential development of the parcel complied with the goals of Kershaw County's Comprehensive Plan and Future Use Map, and the development would protect nearby property owners from future uses of the parcel not compatible with the area, such as sheep and goat farming, mining, sewer collection and treatment, wild game processing, waste management services, and other industrial and commercial uses." *Id*. ¶ 23. "Specifically, the staff found that the parcel was located in an area of Lugoff that was favorable for residential development, which would provide quality infill housing in close proximity to public and medical services, parks, and businesses, the City of Camden, and access to Interstate 20 and local state highways." *Id*. ¶ 24.

"The staff also determined that the proposed residential development would not negatively impact nearby property values." *Id*. ¶ 25. "The staff [further] noted that the proposal included utilization of public sewer, which would limit the number of additional septic tanks in the area." *Id*. ¶ 26 "In all, the staff noted no reasons to deny the rezoning request, and recommended to the Planning Commission that the R-15 zoning request be approved." *Id*. ¶ 27.

"The Planning Commission agreed and recommended [that] Kershaw County Council approve the zoning request." *Id*. ¶ 28. The staff noted in their report to Kershaw County Council, however, that, "[o]n December 11, 2017[,] the Planning . . . Commission held a public hearing on the request . . . . to rezone the land at 299 Friends Neck Road . . . . There were five (5) members of the public present to speak in opposition of the rezoning. They also presented a petition with approximately 120 signatures to demonstrate their resistance." Kershaw County's Motion for

Summary Judgment, Exhibit K at 16. "[A]t its February [13], 2018, meeting, County Council voted 6-1 to deny . . . a first reading of the request, again providing no official reason." Complaint ¶ 29.

According to Two Parks, "[i]n denying Two Parks's rezoning application, Kershaw County Council has acted arbitrarily, capriciously, and without any rational basis." *Id*. ¶ 30. "Since April 2016, Kershaw County Council has denied only one other applicant with a rezoning request similar to that of Two Parks, and has unanimously or almost unanimously approved at least ten others in similar circumstances. Only one applicant who is, like Two Parks, based outside of Kershaw County has had a similar zoning request denied." *Id*. ¶ 31.

In addition, Two Parks contends as follows: "Kershaw County Council has arbitrarily, capriciously, and without any rational basis singled out Two Parks for unequal treatment, and/or has done so due to animosity or ill will toward Mr. Pickrel, the primary principal of Two Parks." *Id*. ¶ 32. "The unofficial—and vague, uninvestigated, and unfounded—reasons for County Council's denial of the rezoning application were mere pretext." *Id*. ¶ 33. "In so acting, Kershaw County Council has caused substantial financial losses to Two Parks." *Id*. ¶ 34.

After Two Parks filed its complaint, Kershaw County filed a motion for summary judgment, Two Parks filed a response in opposition, and Kershaw County filed a reply in support. The Court, having been briefed on the relevant issues, is prepared to adjudicate Kershaw County's motion on the merits.

### III.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23. Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine

issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a substantive disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251–52. The substantive law of the case identifies which facts are material. *Id*. at 248. Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

### IV.   DISCUSSION AND ANALYSIS

#### A.    *Whether Two Parks has properly alleged an Equal Protection claim*

Kershaw County contends Two Parks' Equal Protection claim fails to meet the pleading requirements and, therefore, must be dismissed. Two Parks, however, counters that dismissal on this ground would be improper inasmuch as its complaint sufficiently states a cause of action that it, as a class of one, was injured by the arbitrary and capricious denial of its rezoning requests by the Kershaw County Council. Where a plaintiff in an equal protection claim does not allege that distinctions were made on the basis of a suspect classification such as race, nationality, gender or religion, the claim arises under the "class of one" theory. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The Supreme Court has "explained that the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id*. (citation omitted) (internal quotation marks omitted) (alteration marks omitted). The elements of an equal protection claim are as follows: (1) the defendant treated him differently than others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Id*.

By stating in its complaint that its "proposed residential development of . . . 137 homes was very similar to developments recently approved by Kershaw County Council," Complaint ¶ 19, Two Parks has alleged that Kershaw County treated it differently than others similarly situated. In addition, as the Court noted above, Two Parks claims that, "[i]n arbitrarily, capriciously, and without any rational basis singling out Two Parks for unequal treatment in rezoning requests, and/or doing so based on animosity or ill will toward Mr. Pickrel, Kershaw County has violated the rights of Two Parks, as a class of one, pursuant to the Equal Protection Clause of the Fourteenth Amendment." *Id*. ¶ 36. Thus, Two Parks has also satisfied the intentionality and no-rational-basis requirements of properly alleging an equal protection claim.

Therefore, the Court concludes it would be error to grant Kershaw County's motion for summary judgment on the basis that Two Parks failed to meet the equal protection pleading requirements.

  **B.**  ***Whether Two Parks has established Kershaw County's zoning decisions rise to the level of a constitutional deprivation***

Kershaw County maintains that "the record before the Court clearly shows that [its] decision to deny [Two Parks's] rezoning request was made after careful consideration and deliberation." Kershaw's Motion for Summary Judgment at 7. It contends that Two Parks's rezoing "request encountered significant public outcry and opposition[;]" and that "[t]hat public outcry and opposition alone supports the decision of [Kershaw County] to deny the rezoning request, and leads to only one logical conclusion, which is that [Kershaw County's] decision was at the bare minimum fairly debatable, and therefore [Two Parks] has failed to establish its claim." *Id*. at 7-8 (citations omitted).

In addition, Kershaw County asserts "there is . . . no basis in the record before this Court upon which to find that [Kershaw] County's decision to deny [Two Parks's] rezoning request was arbitrary or capricious, nor is there any basis upon which to find that [Two Parks] suffered unequal treatment through the rezoning process." *Id*. at 10.

Two Parks, on the other hand, argues that Kershaw County's "argument that public opposition justifies denying an application has already been struck down by the South Carolina Supreme Court on two occasions." Two Parks's Response in Opposition at 10. According to Two Parks, "[i]f the denial of [its] rezoning application was caused by the public outcry mentioned by [Kershaw County], prior decisions make it clear that that action was arbitrary and capricious. The only other explanation offered comes from [Two Parks], and that is bias by [Kershaw County] against entities from outside of Kershaw County." *Id*. at 11.

The first case Two Parks cites for its argument that it was improper for Kershaw County to consider public opposition to Two Parks's zoning request is *Bannum, Inc. v. City of Columbia*, 516 S.E.2d 439, 441 (S.C. 1999). In that case, the court held that, "stating that the fears of neighboring

9

residents who did not want (change or development) simply (do) not provide such a basis for denial of the permit[ ]" by the zoning board. *Id*.

The second case is *Wyndham Enterprises, LLC v. City of North Augusta*, 735 S.E.2d 659 (S.C. Ct. App. 2012), in which the court stated that, "[i]n making quasi-judicial decisions," the zoning board was required to "ascertain the existence of facts, investigate the facts, hold hearings, weigh evidence and draw conclusions from them, as a basis for official action, and exercise discretion of judicial nature." *Id*. at 662. The court concluded that the zoning board's "decision was not supported by competent, substantial, and material evidence, and was based on opinion and speculation testimony," and, thus reversed the circuit court's decision to affirm the zoning board. *Id*. at 663.

Unlike this case, however, these two cases are concerned with city zoning boards, which are established by statute. *See* S.C. Code Ann. § 6-29-780(A) ("As a part of the administrative mechanism designed to enforce the zoning ordinance, the zoning ordinance may provide for the creation of a board to be known as the board of zoning appeals."). And, as the Court noted above, these boards make quasi-judicial decisions on zoning related questions.

That, however, is not what we have here. In this case, the Court is reviewing the zoning decisions made by the Kershaw County Council, which a legislative entity, not a quasi-judicial one. Consequently, *Bannum* and *Wyndham* are inapplicable to the facts of this case.

When the Court reviews a legislative decision such as the one at issue here, "the existence of facts supporting the legislative judgment is to be presumed." *United States v. Carolene Products Co*., 304 U.S. 144, 152 (1938). And, "[i]f the validity of the legislative classification for zoning

10

purposes [is] fairly debatable, the legislative judgment must be allowed to control." *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 388 (1926).

Circling back to the three elements of an equal protection claim, in such as claim, the plaintiff must demonstrate (1) that the defendant treated him differently than others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. *Vill. of Willowbrook*, 528 U.S. at 564.

Although not altogether certain, for purposes of deciding this motion, the Court will assume Two Parks satisfies the first two elements of its Equal Protection claim: (1) it could convince a reasonable jury that, as an out-of-county developer, Kershaw County treated it differently than other similarly situated Kershaw County developers, and (2) Kershaw County did so intentionally.

Nevertheless, Two Parks has wholly failed to establish the third element: that there was no rationale basis for the difference in treatment. It argues in its response that the reason it was treated differently "is bias by [Kershaw County] against entities from outside of Kershaw County." Two Parks's Response in Opposition at 11. But, besides this allegation of bias, Two Parks has failed to present any evidence of purposeful discrimination.

Disparate treatment, without more, is an insufficient basis on which to support a Constitutional violation. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 329 (4th Cir. 2005). As the Fourth Circuit opined, "[e]ven if we were to determine that plaintiffs' project was similarly situated to other projects, they would still need to show purposeful discrimination." *Id*.

As per well-settled South Carolina law, "[t]he governing bodies of municipalities clothed with authority to decide residential and industrial districts are better qualified by their knowledge of

11

the situation to act upon these matters than are the courts, and their decisions will not be interfered with unless there is a plain violation of the constitutional rights of citizens." *Harbit v. City of Charleston*, 675 S.E.2d 776, 780, 382 S.C. 383, 390 (S.C. Ct. App. 2009).  The Court will not 'insinuate [its] judgment into a review of the . . . [C]ouncil's decision but must leave that decision undisturbed if the propriety of that decision is even fairly debatable.  *Id*. at 391 (citation omitted) (internal quotation marks omitted).  And, although "all of the residents' concerns might not be well-founded, . . . Council's response to public opposition does not rise to the level of a constitutional violation."  *Id.*

Furthermore, South Carolina Courts have held that a property owner is not entitled to have his property zoned for its most profitable use.  *Hampton v. Richland County*, 357 S.E.2d 463 (S.C. Ct. App. 1987).  In other words, a zoning classification is not unconstitutional simply because a developer is deprived of a more profitable use of his property.  *Id*.

The Court observed above that, at the October 25, 2016, meeting when the Kershaw County Council first rejected Two Parks's rezoning request, seven individuals registered their opposition and/or concern about the rezoning request and one individual presented a petition with 250 signatures in opposition.  Kershaw County's Motion for Summary Judgment, Exhibit G at 4.

And, in the staff report to Kershaw County Council for its February 13, 2018, meeting at which the Council rejected Two Park's second rezoning request, the staff noted that, "[o]n December 11, 2017 the Planning and Zoning Commission held a public hearing on the request . . . .to rezone the land 299 Friends Neck Road . . . consisting of approximately 93.6 acres from RD-1 rural resource district to R-15 residential zoning.. . . . There were five . . . members of the public present to speak in opposition of the rezoning. They also presented a  petition with approximately 120 signatures to demonstrate their resistance." Kershaw County's Motion for Summary Judgment, Exhibit K at 16.

Two Parks makes much of the fact that, in the petitions in opposition to its two rezoning

12

requests, the signators failed to state why they opposed the requests. In the Court's experience however, this is usually the case: the specific reason a signator has for signing a petition is not typically evidenced on the petition.

Given the public opposition to Two Park's rezoning request, it is obvious to this Court that the Council's decision on whether to grant Two Parks the zoning variance was debatable. And, as the Court has already mentioned, "[i]f the validity of the legislative classification for zoning purposes [is] fairly debatable, the legislative judgment must be allowed to control." *Vill. of Euclid, Ohio*, 272 U.S. at 388. In other words, there was rationale basis for Kershaw County's difference in treatment of Two Parks.

In sum, the Court is unable to conclude there is any evidence in the record showing that Two Parks was subjected to any sort of purposeful or invidious discrimination. Thus, Two Parks's allegation of such unlawful bias appears to be based on nothing more than speculation and conjecture.

Instead, the evidence in the record demonstrates there was much public opposition to Two Parks's request for a rezoning of the land off of Friends Neck Road in Lugoff, South Carolina, for a host of reasons, some relevant to Council's review and some, perhaps, not. But, the evidence that the Kershaw County Council "responded to the public opposition does not rise to the level of a Constitutional violation," inasmuch as the Fourth Circuit has long "recognized that matters of zoning are inherently political, and that it is a zoning [decisionmakers'] responsibility to mediate disputes between developers, and local residents." *Sunrise Corp. of Myrtle Beach*, 420 F.3d at 329.

Consequently, the Court concludes Kershaw County is entitled to summary judgment on this basis.

## V.  CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Kershaw County's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 10th day of February, 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
